Judge Owsley
delivered the opinion of the court.
This was an action of detinue, brought in the circuit court by the appellant, to recover a negro man named Harry. The writ emanated the 22d of May, 1818, and the trial was had at the August term, 1819.
In the progress of the trial, the appellant proved title in the property; and that the intestate, at the time of his decease, and his administrators since, have held the negro as his bailees—whereupon the appellees introduced as evidence a writing, purporting to be a bill of sale for the negro, executed by a certain John Ward, constable, to the; appellee, James, and describing the negro to have been sold by the constable in virtue of a fieri facias which issued from a justice of the peace against the estate of the appellant, and bearing date the 8th day of November, 1818; and also produced a transcript of a record, consisting of a warrant, judgment, bond upon which the judgment was rendered, and the fieri facias under which the sale was made of the negro by the constable: but to the using of the; transcript in evidence, the appellant objected, on the ground, 1st, of its not being properly authenticated; and 2d, because the sale appeared to have been made during the pendency of this action—the objections were, however, overruled, and the record read to the jury.
The appellant then introduced and read as evidence the following instrument of writing:
“Memorandum of an agreement entered into this 28th “day of August, 1818, between Moses Thomas, of the one “part, and William Buckhannan, of the other part, witnesseth; that for and in consideration of one thousand and “fifty dollars, in hand paid, by the said Buckhannan unto “the,said Thomas, he, the said Thomas, doth convey the “the right of a negro slave by the name of Harry, aged “twenty-three years, now in the possession of Sally Tho“mas and James Thomas, administrators of the estate of “Robert Thomas, dec. unto the said Buckhannan and his “heirs and assigns forever; and doth warrant the said negro Harry a slave during his natural life—Whereas, there ‘‘has been a suit brought by the aforesaid Thomas against “the said administrators of Robert Thomas, dec. for the “said Harry, the said Buckhannan is fully authorised t *431 o "prosecute the said suit for said Harry, and if recovered “by |aw, he is fully empowered to receive him, as the said “Thomas has put the right of said Harry fully in the said “Buckhannan; and as it is contemplated that several years “hire of the said negro will be recovered at the same time “of the recovery of the negro, it is clearly understood that “Buckhannan is authorised to receive the same, and to appropriate the sum of two hundred dollars of the same to “his use, and all that maybe obtained from, this date for ‘‘hire; and in case Buckhannan shall not succeed in obtaining said negro by law, in that case said Moses Thomas doth bind himself to refund the aforesaid sum of one “thousand and fifty dollars to said Buckhannan, with interest; and further to secure the payment thereof, George “Thomas doth join in this obligation is security to pay the “same to said Buckhannan, in case of his failing to get said “negro Harry. In testiinofiy whereof, &c. signed, &c.
Whereupon, the appellees moved the court, and it accordingly instructed the jury, that the bill of sale, so read, from Thomas to Buckhannan, shewed a title out of the appellant, and consequently furnished in itself a bar to his recovery. Exceptions were taken to the opinion of thy court, as well in permitting the transcript of the record to go in evidence to the jury, as in giving the instructions to the jury, and the whole of the evidence spread upon the record.
Under the instructions of the court the jury found a verdict for the appellees, and judgment was rendered thereon against the appellant—and from that judgment he has appealed to this court.
The assignment of errors questions the decision of the circuit court on every point, and in argument here, it was contended that the objections taken in that court to the record should not only have been sustained; but it was moreover urged that the record furnishes intrinsic evidence of the cause; for which the judgment of the justice was given, not being cognisable before a magistrate—and as such, if liable to no other objection, it was insisted the record should have been excluded from the jury.
The bond copied in the record, and upon which the warrant and judgment were founded, contains the following stipulations—“Under the penalty of forty dollars, I bind myself, &c. to pay Jacob S. Gardner, &c. the sum of twenty dollars for the hire of a negro, Mary, which said negro is to be returned at Huntsville, and the money to be paid on *432 or before the first day of January, 1813; I moreover bind myself to furnish said negro, with good suits of summer and winter clothes, and blanket and hat.
Tho' a bond (for less than $50) may contain collateral covenants not necessarily connected with the payment the money the justice has cognisance of the money part of demand.
The judgment rendered by the justice is for $20 with interest from the 1st day of January, 1813.
The question of the cognisance turns upon the import of the act of the 28th of January, 1813—The 5th section of that act (page 43) provides that justices of the peace shall have exclusive original jurisdiction of all sums not exceding fifty dollars, founded on any specialty, bill, or note in writing, or account.
The expressions all sums contained, in this section, it is contended should be construed to mean sums of a money, and by employing those expressions, the legislature designed, barely to translate from the circuit court to justices of the peace, original jurisdiction of causes founded upon writings containing no stipulations for doing or performing any thing other than the payment of money; and as the bond cited contains stipulations for clothing the negro as well as for her return it is insisted that suit should have been brought in the circuit court and not before a justice.
Whether or not the act should be construed to give justices jurisdiction in cases arising upon a failure to perform a covenant to pay property, as it is not essential to the decision of the present contest, we shall not stop to enquire; but be that as it may we see no reason against the exercise of jurisdiction in the case now under consideration.
The judgment may have been, and most probably was rendered for the nonpayment of the twenty dollars agreed to be paid for the hire of the negro; and if so according to the letter, as well as the spirit of the act, it was cognisable before the justice.
It was emphatically a sum, not exceeding fifty dollars, and founded upon a bond in writing. The bond it is true contains other stipulations; but those stipulations are not so connected with that for the hire, as that a failure to perform the one, would be a breach as to the other. Each stipulation is in its nature, separate and distinct, and required separate and distinct acts of performance. The negro may have been clothed and not delivered, she may have been both clothed and delivered and yet the hire not paid. For failure either in the one or the other, there is no doubt but before the passage of the act translating the jurisdiction from the circuit court to justices of the peace, an action *433 might have been sustained, and in declaring in such an action it would be sufficient to alledge the breach in that stipulation, and that only, which had not been performed. But to return to the objections taken to the record in the circuit court—and with respect to that which questions the propriety of its authentication, it need only be remarked that no specific defect is pointed out in the exceptions to the opinion of that court, nor any suggested in the argument here, and we have been unable to discover any deserving serious consideration. The record contains a regular history of the proceedings on the warrant, from the commencement to its termination, certified to be a true copy, and regularly attested by the justice.
A slave the property of one man, but in the possession of another, merely as bailee, & without claim of title, is liable to execution for the debt of the bailor, even tho’ suit be brought to re-cover possession, such suit does not change the nature of the right or convert the slave into a chose in action, which cannot be taken in execution.
The record, however shews that the negro now in contest was taken in execution and sold by the constable as the appellant’s property after the commencement and during the pendency of this cause in the circuit court, and the other objection is taken to the record, on the supposition of the negro under such circumstances, not being liable to execution.
The objection appears to have been placed exclusively on the ground of the pending of the suit, when the negro was sold, so that if in any case, after suit brought to recover property it may be taken in execution against the plaintiff, the objection cannot be said to have been improperly overruled.
But considered in connection with the other evidence in the cause, the case is a strong one in favor of the admission of the record. The intestate is proven to have held the negro during his life, and the appellees since, simply; as bailees, and there is not a scintilla of evidence; conducing to prove; that either the intestate or appellees, ever refused to deliver the negro to the appellant, or did any other act, which in legal contemplation, could have subjected them to an action of trover and conversion. Under these circumstances, we entertain no doubt but the negro was liable to the execution. The right of the appellant, as it is proven to have existed at the commencement of his action, cannot be denominated a mere chose or right in action, and the mere circumstance of bringing suit cannot have changed the nature of his right. The commencement of his action was an assertion of right, such as it was, but cannot be admitted to convert that into a right or chose, in action which was not so before suit brought.
A conditional sale of a slave to recover whom suit had been brought, and dependent on the event of the suit, does not bar pltffs right to recover, or to produce a nonsuit.
Had the evidence proved, that either by an assertion of right, or in any other way, the negro had been converted to the use of the intestate, or the appellees, it would be conceded that after such a conversion, whether before or after suit brought, the negro could not have been liable to be taken in execution against the appellant; for it is a settled principle that nothing can be taken under a fieri facias, that cannont be sold (Com. dig. Execution C 3.) and things or choses in action cannot be sold Shep. Touch. 1 240.
It may be a subject of some difficulty to define with precision and to discriminate accurately between those things which are properly in action and such as are not so; but the distinction, nevertheless prevails, and we know of no rule better calculated to produce a correct result than the one which has been already hinted at—that of a conversion of property, to which the owner had before a right After a conversion the owner may either bring detinue for the property or trover for its conversion. In the action of trover the property cannot be recovered; but damages for the conversion may.
The right to recover damages, must, therefore, be a right merely in action; and none, it is presumed, will contend, that such a right is liable to sale by execution. In detinue the property itself may be recovered, but the nature of the right is, in both actions the same, and the only, difference is in the remedy. After a conversion of the property, by the defendant, in both cases, the right is in action, and as the right to the damages which may be recovered in the action of trover, cannot be taken and sold under a fieri facias, so we apprehend, the right to the property which may be recovered in the action of detinue cannot be taken in execution
Having disposed of the objections taken to the record, we are led to examine the instructions given by the court to the jury. Those instructions pronounced the right of the appellant to recover, to be barred by the writing executed by him, to Buckhannon.
From what has been already said, it will be perceived, that as there was no evidence of the negro having been converted, either by the intestate or appellees, the appellant may have sold him to Buckhannon, and if the writing imports an absolute sale without any reservation or restriction, as to maintain detinue, the plaintiff must have right, the instructions of the court were correct. But in giving a con *435 struction to the writing, it is important to consult the intention of the parties, and if possible give the writing that operation which may the more certainly comport with their understanding. The intention should not, however, be sought for, by adhering strictly to the rules of grammar, but by a proper regard, as well to the subject matter about which the parties were contracting, as to the general tenor of the language employed in the writing. Thus proceeding, we cannot accord with the circuit court in the construction given. It is perfectly clear the parties intended the contract they were about making should not have the effect of discontinuing the suit which had been commenced, by the appellant, for the negro, and which was then depending. From some of the expressions used in the first part of the writing; it might be inferred, that an absolute sale was intended, and that Buckhannon was thereby to gain an immediate and exclusive right to the negro; but when taken in connection with the subsequent stipulations, we apprehend the import of those expressions should yield to the intention subsequently expressed; and if so, as the suit was to be prosecuted in the name of the appellant, and indemnity to be made by him, in case of his failure to recover the negro, it is evident the parties must have intended, by their contract, not to invest Buckhannon with the immediate right to the negro, but for the right to continue in the appellant, for the purpose of investigating the title in the suit then depending, and upon the event of a recovery, to clothe Buckhannon with an exclusive and indefeasible right.
Wickliffe, for plaintiff.
It results therefore, that the judgment must be reversed with costs, the cause remanded and further proceedings had, not inconsistent with this opinion.